## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

LARRY WINKFIELD, R74765,    )
           )
    Plaintiff,    )
           )
    v.    )    **Case No. 14-cv-584-SMY-RJD**
           )
DAVID DEAN and    )
DAVID FOLSOM,    )
           )
    Defendants.    )

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Before the Court is the Motion for Partial Summary Judgment filed by Defendants David Dean and David Folsom. Plaintiff Larry Winkfield is an inmate within the Illinois Department of Corrections ("IDOC") prison system and the defendants are IDOC correctional officers. In his Complaint, Winkfield claims that on August 20, 2013, the defendants subjected him to excessive force while in the Shawnee Correctional Center ("Shawnee") segregation unit.

Winkfield filed suit on May 21, 2014 (Doc. 1), and he now proceeds on his Second Amended Complaint (Doc. 46). He asserts an Eighth Amendment excessive force claim against Defendants, as well as state law assault and battery claims. For the following reasons, the motion is **GRANTED in part and DENIED in part**.

### BACKGROUND

Plaintiff Larry Winkfield entered IDOC custody in late 2012. (Winkfield Deposition, Doc. 107-1, p. 3). After a brief stay at Stateville Correctional Center, he was transferred to Shawnee. *Id.* The incidents that give rise to this litigation occurred on August 20, 2013, while Winkfield was in the Shawnee segregation unit. *Id.* Inmates are generally placed in segregation

for disciplinary reasons, and the segregation inmates have fewer privileges than those in general population. (Dean Deposition, Doc. 107-2, p. 4). The segregation unit is also physically separated from the general population units. *Id.*

As of August 20, 2013, Winkfield had been housed in segregation for "a couple of weeks," and was scheduled to use the showers on that date. (Doc. 107-1, p. 4). At approximately 10:48 A.M. (*see* Disciplinary Report at Doc. 107-3), Defendant Dean arrived at Winkfield's cell so that he could escort Winkfield and his cellmate to the shower area. (Doc. 107-1, p. 4). Winkfield placed his hands behind his back and through the cell door chuckhole so that Dean could handcuff him. *Id.* Winkfield's cellmate, inmate Gibson, did the same. *Id.* After the two were handcuffed, Dean opened the cell door and Gibson exited the cell. *Id.* At this point, Defendant Folsom arrived at Winkfield's cell and noticed that Winkfield possessed a bottle of body wash. *Id.* Dean testified at his deposition that liquid soap is not allowed in the segregation unit due to safety reasons. (Doc. 107-2, p. 6). However, Winkfield testified at his deposition that he thought it was permitted. (Doc. 107-1, p. 4).

Folsom asked Winkfield why there was body wash in his cell, and the two began to argue. *Id.* at pp. 4-5. Folsom then forcefully pushed Winkfield's head against the cell wall. *Id.* at p. 5. Winkfield turned around to face Folsom and Folsom punched him in his left eye. *Id.* at p. 5. At that point, Dean used his body to pin Winkfield up against the cell wall. *Id.* Winkfield testified at his deposition that Dean never hit him and he does not recall suffering any injuries from Dean's use of force. *Id.* at p. 6. Winkfield also testified that he "might have tried" to kick Folsom at that time, but was unable to do so because he was pinned to the wall. *Id.* at p. 6.

After Winkfield was pinned to the wall, the defendants latched an extra set of handcuffs to the existing set that were already on Winkfield. *Id.* at p. 6. Dean and Folsom then exited the

cell, leaving Winkfield in the cell by himself. *Id*. at p. 6. While the two exited the cell, they were able to drag Winkfield to the cell door. *Id*. at p. 5. Dean then began to uncuff Winkfield. *Id*. at p. 7. Winkfield testified that as he was being uncuffed, his arm was aggressively pulled through the cell door chuckhole, thereby cutting his arm. *Id*. at p. 7. The Warden and Shift Commander arrived at Winkfield's cell a short time later. *Id*. at p. 6. They told Winkfield to cuff up and Winkfield was escorted to a stripped down cell. *Id*. at p. 6.

The following day, Winkfield was examined in the Shawnee Health Care Unit by Nurse Debbie Perkins. (Doc. 107-5). Nurse Perkins drafted an "Offender Injury Report" that states in part:

> How did the injury occur?:  Inmate states right arm cut when cuffed. Right arm pulled by Sergeant Folsom. Inmate self reports right eye bumped at this time.
> **…**
> S (Subjective Findings): Inmate self reports while being cuffed in cell right arm was hit on cell door chuckhole causing cut to right arm area. Complains of swelling to right eyelid head bumped during cuffing of inmate. Inmate self reports officer cuffing inmate was Sergeant Folsom. No complaints of blurred vision. No redness no bruising.
> …
> Noted right arm superficial abrasion approximately 3 centimeters by 0.5 centimeters. Superficial redness opened no bleeding. Eval brief related to inmate behavior. Inmate covering glass in cell with paper. Exam through chuck for safety. Security reported threatening behaviors. Right arm cleaned.
> …
> P (Treatment and Follow-up): Area right arm cleansed with betadine. Rinsed with normal saline. Bandaid applied. Ice pack to right lower eyelid area. Follow up as needed.

(Doc. 107-5, transcribed at Doc. 107-6).

After the incident in the cell, Dean drafted an Offender Disciplinary Report. (Doc. 107-3). The report states:

> On above date and time [August 20, 2013 at 10:48 A.M.] this R/O was running showers on seg I side. Upon showering seg I-29 (I/M Winkfield R74765 & I/M Gibson R63510) this R/O observed that I/M Winkfield had hidden body wash rolled up in his towel. I/M Winkfield has taken shower items back from the shower to his cell before. This R/O told I/M Winkfield to give him the body wash. I/M Winkfield stated, "That's my shit you

ain't getting it." This R/O gave him another direct order to give it to him. I/M Winkfield stared in an intimidating manner refusing to give up the body wash. Sgt Folsom who was with this R/O gave I/M Winkfield several direct orders to hand over the body wash. I/M Winkfield threw down the body wash in front of himself and stated "come get it" while he was standing over it. Several minutes later after giving more direct orders and threatening to use mace on I/M Winkfield, he finally went to the back of the cell and this R/O recovered the body wash. Once the body wash was recovered the inmates were placed back in their cell (I/M Gibson was removed from the cell when C/O's were dealing with I/M Winkfield). Restraints were removed from I/M Gibson without incident, but when this R/O was removing restraints from I/M Winkfield he pulled away once one side was removed. I/M Winkfield tried to pull this R/O into the chuckhole. But this R/O secured I/M Winkfield's arm and removed the restraint. I/M Winkfield became irate threatening to kill all officers. I/M Winkfield barricaded the door impairing visual into the cell and began destroying the cell and his property. I/M Winkfield destroyed his fan and used the parts as weapons threatening to use it on anybody that came in his cell. The zone Lt was notified which then notified the shift commander. After a negotiation with the shift commander I/M Winkfield was moved to cell 5. I/M Winkfield was identified by state ID. Shakedown slip was issued for broken property. Nothing further.

(Doc. 107-3, pp. 1-2). Winkfield was provided with a copy of the disciplinary report on August 21, 2013. *Id*. at p. 1.

On August 23, 2013, an Adjustment Committee Hearing was held to decide whether Winkfield should be punished for the incident. (Doc. 107-4). The Adjustment Committee found Winkfield guilty of six offenses: dangerous contraband; damage or misuse of property; intimidation or threats; insolence; contraband/unauthorized property; and disobeying a direct order. *Id*. at p. 1. Winkfield was also charged with impairment of surveillance, but the charge was later deleted. *Id*. at p. 1. At the conclusion of the hearing, the Adjustment Committee penalized Winkfield with six months of segregation, a revocation of three months of good time credit and a disciplinary transfer. *Id*. at p. 1.

Winkfield was transferred to Pinckneyville Correctional Center in early September 2013. (Doc. 107-1, p. 18). He filed this lawsuit on May 21, 2014. (Doc. 1). Defendants have now filed a motion for partial summary judgment, arguing that they are entitled to summary judgment on Winkfield's claims that being pinned to the wall by Defendant Dean and pulled through the

chuckhole by both defendants were unconstitutional uses of force or amounted to assault or battery.

## DISCUSSION

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." the Court must examine the record in a light most favorable to the nonmoving party and all reasonable inferences are to be drawn in their favor. *Huang v. Cont'l Cas. Co.*, 754 F.3d 447, 450 (7th Cir. 2014). Summary judgment must be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

As a preliminary matter, pursuant to the Supreme Court's holding in *Heck v. Humphrey,* a plaintiff cannot seek "damages in a § 1983 suit … [if] a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence [.]" *Id.* at 487, 114 S. Ct. at 2372. Prisoners challenging their conviction or duration of confinement may bring a habeas corpus action, but "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments [.]" *Id.* at 486, 114 S. Ct. at 2372. *Heck* also applies to situations where the plaintiff has been subject to the revocation of prison good time credits. *Edwards v. Balisok*, 520 U.S. 641, 648, 117 S. Ct. 1584, 1589, 137 L. Ed. 2d 906 (1997)

In this case, the Shawnee Adjustment Committee revoked three months of Winkfield's good time credit. Therefore, the *Heck* doctrine applies and Winkfield is barred from asserting claims that would imply the invalidity of the Adjustment Committee's ruling. In other words, Winkfield "can only proceed to the extent that the facts underlying the excessive force claim are

not inconsistent with the essential facts" supporting the Adjustment Committee's decision. *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014) (citing *Evans v. Poskon*, 603 F.3d 362 (7th Cir.2010)).

With this framework in mind, the Court will address the merits of Defendants' motion. Defendants first argue that Dean did not unlawfully pin Winkfield against the wall. When presented with an excessive force claim, "[t]he core judicial inquiry … [is] whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010) (internal quotation marks omitted). Courts must consider, "the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009).

Here, Winkfield alleges that he was in his cell when he got into an argument with Folsom regarding the body wash. He also alleges that Folsom punched him in the face and slammed his head against the cell wall and that Dean used his body to pin Winkfield against the cell wall. Dean never hit Winkfield nor did Winkfield suffer any injuries as a result of Dean pinning him against the wall. Under these circumstances, Dean acted reasonably. By using his own body to subdue Winkfield, Dean placed himself between Winkfield and Folsom – thereby mitigating Folsom's use of force. Moreover, Winkfield admitted at his deposition that he "might" have been trying to kick Folsom while he was pinned to the wall. When the facts are viewed as a whole, Dean used a reasonable amount of force to control the situation. As such, no reasonable jury could find that Dean's use of force in pinning Winkfield to the cell wall was excessive.

Winkfield also asserts that Dean's use of force constituted state law assault and battery. Common law battery consists of "unauthorized touching of the person of another." *In re Estate of Allen*, 365 Ill. App. 3d 378, 385, 848 N.E.2d 202, 210 (2006). Assault is defined as "an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Parrish by Bowker v. Donahue*, 110 Ill. App. 3d 1081, 1083, 443 N.E.2d 786, 788 (1982). In the prison context, Illinois law provides that "[i]f one or more committed persons … disobeys or resists any lawful command, the employees, officers, guards and other peace officers shall use all suitable means to defend themselves, to enforce the observance of discipline, to secure the persons of the offenders, and prevent such attempted violence or escape[.]" 730 ILCS 5/3-6-4; *see also* Ill. Admin. Code tit. 20, § 501.40. Dean's actions in subduing Winkfield can hardly be viewed as "unsuitable." Dean used his body weight to pin Winkfield against the cell wall, without causing injury to Winkfield. Based on these facts, no reasonable jury could conclude that Dean's actions were unsuitable. Thus, Dean is entitled to summary judgment on Winkfield's claims that Dean's use of force to pin Winkfield against the wall was excessive and unlawful.

Defendants also seek summary judgment on Winkfield's claims that he was subjected to excessive force, assault and battery when his arm was injured in the chuckhole. According to the disciplinary report and Adjustment Committee decision, Winkfield did attempt to pull his harms back into the cell from the chuckhole when only one of the cuffs had been removed. At that point, a "tug of war" ensued between Winkfield on the inside of the cell, and Folsom and Dean on the outside of the cell. The fracas ended quickly, but Winkfield contends that the defendants used excessive force and that his arm was cut during the process.

The nurse's report from the following day indicates that Winkfield did sustain a cut on his arm. When viewed in the light most favorable to him, Winkfield has presented sufficient evidence to survive summary judgment on his claim that he was subject to excessive force at the chuckhole. However, it must also be noted that Winkfield's disciplinary report is partially based on the fact that he attempted to pull the handcuffs into the cell through the chuckhole while the defendants were uncuffing him and the Adjustment Committee included the chuckhole incident in its "Basis for Decision." (Doc. 107-4, p. 2). Therefore, pursuant to *Heck v. Humphrey*, Winkfield is precluded from presenting evidence and arguments inconsistent with the fact that he did attempt to pull the handcuffs through the chuckhole.

Finally, Defendants maintain that they are entitled to qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012). Qualified immunity is inappropriate here because the primary dispute is a factual one - whether the use of force at the chuckhole was a good faith effort to restore order or was used "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010).

## CONCLUSION

Summary Judgment is granted in favor of Defendant David Dean as to Plaintiff Larry Winkfield's excessive force claim based on Defendant pinning Plaintiff against the cell wall. The motion is denied in all other respects.

**IT IS SO ORDERED.**

**DATED:  June 5, 2017**

**s/ Staci M. Yandle**
STACI M. YANDLE
United States District Judge